UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TELLY ROYSTER, :
 :
      Plaintiff, : CIVIL NO. 1:CV-06-0842
 :
      v. : (Judge Caputo)
 :
JEFFREY BEARD, *et al.*, :
 :
      Defendants. :

## MEMORANDUM

Presently before the Court is a Motion for Summary Judgment (Doc. 64) filed pursuant to Fed. R. Civ. P. 56 on behalf of Defendants Beard, Burks, Kelchner, Marsh, Steigerwalt, Huber, Kline, Spriggle (now deceased), Lehman, and Stubbs.  For the reasons set forth below, the Motion will be granted.

## BACKGROUND

**I.  Procedural History**

On April 1, 2006, Plaintiff Telly Royster, an inmate presently confined at the Huntingdon State Correctional Institution ("SCI-Huntingdon") in Huntingdon, Pennsylvania, commenced the instant action *pro se* by filing a Complaint pursuant to the provisions of 42 U.S.C. § 1983.  Plaintiff alleges that Defendant Huber retaliated against him by destroying books that he confiscated from Plaintiff's cell.  He also alleges that Defendants Beard, Kelchner, Marsh, and Burks retaliated against him by lying about the destruction of the books and conspired with each other to cover up the destruction of his property.

On July 25, 2006, Defendants filed a Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. 15.)  In support of their Motion, Defendants

argued that any claims of wrongful acts occurring before April 24, 2004 were barred by the applicable two-year statute of limitations; Plaintiff failed to state a claim of a constitutional violation against Defendants Burks and Beard for upholding denials of his grievances; and Plaintiff failed to state a due process claim because the grievance process afforded him adequate post-deprivation procedures for his confiscated property. (*See* Doc. 16.)  By Order dated May 2, 2007, the Motion was granted as to the statute of limitations argument, and all claims arising prior to April 24, 2004 were dismissed as barred by the statute of limitations. (*See* Doc. 31.)  The Motion was denied in all other respects. (*See id.*) Plaintiff's Motion seeking reconsideration of the Court's dismissal of his claims arising prior to April 24, 2004 was denied by Order dated November 9, 2007. (*See* Doc. 57.)

On February 19, 2008, the instant Motion for Summary Judgment was filed. (Doc. 64.)  In support of their Motion, Defendants filed a Statement of Facts (Doc. 65), Brief (Doc. 66), and Appendix (Doc. 67).  After a request for an extension of time to file his opposition, which was granted (Doc. 69), Plaintiff filed his Brief in Opposition (Doc. 70) and Statement of Material Facts (Doc. 71).  Therefore, the Motion is ripe for review.

**II.    Statement of Facts**[1]

Royster testified at his deposition that, at all relevant times, he was an inmate in Phase 5 of the Special Management Unit ("SMU") at the Camp Hill State Correctional

---

1.   In accordance with the applicable standard in disposing of motions for summary judgment, the facts will be presented in the light most favorable to Plaintiff as the non-moving party.

2

Institution ("SCI-Camp Hill") in Camp Hill, Pennsylvania.[2]  (Doc. 65 ¶ 1; Doc. 67, Plaintiff's deposition, at 10-11.)  Royster names the following Defendants who were employed at SCI-Camp Hill at the time of the events alleged in his Complaint: Jeffrey A. Beard, Ph.D., Department of Corrections Secretary; Sharon Burks, former Chief Grievance Officer; Superintendent Kelchner; Unit Manager Marsh; Unit Manager Steigerwalt; Officer Huber; Officer Kline; Officer Spriggle (now deceased); Officer Lehman; and Officer Stubbs.

On April 5, 2004, Defendant Marsh issued a memorandum to all SMU inmates advising them that they would not be permitted to keep more than ten (10) books in their cells and stored property.  (Doc. 65 ¶ 14; Doc. 67 at 68.)  The ten book limit already was in place pursuant to DC-ADM 802, but Marsh's memorandum reminded SMU inmates about the limit.  (Doc. 65 ¶ 14.)  The memorandum advised SMU inmates that if they were over the ten book limit, they could submit a request to staff for disposition of the excess books and that otherwise, the excess books would be confiscated. (Doc. 67 at 68.)  The purpose of the limitation on books is to decrease the chance of contraband as well as to avoid the fire hazards associated with a cluttered cell.  (Doc. 65 ¶ 14.)

On April 27, 2004, Defendant Huber confiscated eighteen (18) books from Royster's cell that were beyond the ten book limit.  (Doc. 67, Huber Declaration, at 124 ¶ 5; Doc. 67, confiscation receipts, at 126.)  Royster acknowledges that, on April 27, 2004, he was informed about the memorandum and was advised that he needed to either destroy or ship

---

2.   The SMU consists of five phases, and Phase 5 is the most restrictive custody level. (Doc. 65 ¶ 12.)  There are restrictions on privileges and possession of property in the SMU. (*Id.*)  As inmates progress through the phases, their access to privileges and services is increased.  (*Id.*)

out the eighteen (18) books.  (Doc. 1 at 4 ¶ 12; Doc. 67 at 12.)  Royster could not recall the titles or authors of any of the books at his deposition, but he agrees that their titles are listed on the confiscation receipts that were prepared by Defendant Huber when the books were removed from Plaintiff's cell.  (Doc. 67 at 15-16, 126; Doc. 71, Plaintiff's Statement of Facts, ¶ 4.)  The books were gifts from friends and family and were on different topics.  (Doc. 65 ¶ 4; Doc. 67 at 16-17.)

On April 27, 2004, Royster filed grievance number 82536 asserting that he should be permitted time to read books that he did not have a chance to read because he had been forced to keep them in his storage unit.  (Doc. 67 at 77.)  He also complained that a specific book that he requested had not yet been issued to him and requested reimbursement of $17.45 if the book was not recovered.  (*Id.*)  On May 4, 2004, Grievance Officer Garrett responded by reminding Royster of the ten book limit and also of the policy that the exchange of books is on a one for one basis.  (*Id.* at 78.)

On May 14, 2004, Defendant Kelchner responded to Royster's appeal from the denial of grievance 82536 by stating that the property officers properly handled Royster's excess property by confiscating the books he had in excess of the ten book limit and directing him to decide which ones he wanted to ship out and which he wanted to destroy.  (*Id.* at 79.)  He further noted that the SMU staff was under no obligation to maintain the excess books until Royster had an opportunity to read them.  (*Id.*)  In addition, he informed Royster that in order to receive reimbursement for a missing book, he needed to show that he received it, that it was confiscated, and provide a receipt showing the cost of the book.  (*Id.*)

4

On or around June 15, 2004, after Royster received Kelchner's response to grievance number 82536, Royster tried to arrange for the shipment of his excess books through Defendant Huber, but Huber stated, "I told you I'd get your ass back, don't try to suck my dick now for your property. You ain't shipping shit out." (Doc. 1 at 4 ¶ 14.) Royster contends that, sometime after February 5, 2004 when he filed a grievance concerning photographs that were missing from his stored property, Defendant Huber threatened him by saying, "that fucking grievance fell on me Royster but I'll have the last laugh when I get your ass back." (*Id.* ¶¶ 10-11.)

On June 29, 2004, Defendant Burks denied Royster's appeal to final review of grievance number 82536. (Doc. 65 ¶ 48; Doc. 67 at 102.) In her response, Burks noted that, as an SMU inmate, Royster was permitted to have only ten books and that SMU staff is not permitted to retain his excess books until he has a chance to read them. (Doc. 67 at 102.)

On June 23, 2004, before the review process on grievance number 82536 was completed, Royster filed grievance number 87765 stating that he wanted to destroy ten (10) of the eighteen excess books and ship the other eight (8) books, but Defendant Huber refused to arrange for the shipment of the books. (Doc. 65 ¶ 16; Doc. 67 at 80.) On June 29, 2004, Defendant Marsh, who was then the manager of the SMU unit, incorrectly responded to Royster's grievance that the books listed on the confiscated items receipts had been shipped. (Doc. 65 ¶¶ 9, 16; Doc. 67 at 81.)  Marsh had been incorrectly informed during his investigation of Royster's grievance that the books had been shipped. (Doc. 67 at 65 ¶ 8.)  Marsh later learned that the confiscated books had been destroyed by

5

someone in the SMU after grievance number 87765 was denied.  (*Id.* ¶¶ 8, 9.)  In his Declaration, Marsh states that it was standard procedure to retain possession of any confiscated property in dispute until after an inmate's relevant grievance appeals had been resolved.  (*Id.* ¶ 9.)

In his appeal from Defendant Marsh's denial of his grievance, Royster complained about Marsh's handling of the slips he submitted requesting some of his books.  (Doc. 67 at 82.)  He threatened to file a civil rights lawsuit if his requests were not honored.  (*Id.*)  In a response dated July 26, 2004, Defendant Kelchner stated that he found Marsh's response to be appropriate and that there was no evidence to support Royster's contention that Huber and Kelchner were lying to him or not handling his property according to proper procedure.  (*Id.* at 83; Doc. 65 ¶ 29.)

On September 29, 2004, in rejecting Royster's appeal to final review of grievance number 87765, Defendant Burks stated that he provided absolutely no evidence that would support his allegations.  (Doc. 67 at 111.)

On November 3, 2004, Royster filed grievance number 100987 complaining that when he asked the property manager to check, none of his excess eighteen books were in storage.  (*Id.* at 112.)  He also complained about the theft of some of his photographs at an unspecified time.  (*Id.*)  On November 9, 2004, Royster's grievance was rejected on the basis that he already had presented the issues in it in a grievance filed in February 2004.  (*Id.* at 113.)

Royster appealed, and on December 7, 2004, Defendant Kelchner responded by supporting the rejection in part as to the photographs, but remanding the matter to

6

Defendant Marsh to investigate Royster's concerns regarding the eighteen books that he claimed were no longer in storage. (*Id.* at 115.)

On February 3, 2005, Defendant Burks rejected Royster's appeal to final review on the basis that Royster had the opportunity to rectify the situation as to his excess books, but he failed to inform the property officer of his intention to ship the books, and thus they were destroyed. (*Id.* at 116.)

In addition to his grievances, Royster also wrote two letters during the relevant time period to Defendant Beard. In a letter dated February 6, 2005, he complained about the confiscation and destruction of his eighteen books. (*Id.* at 91.) Heather Yates, Special Assistant to Beard, responds to correspondence on Beard's behalf. (Doc. 65 ¶¶ 19, 20.) In her Declaration, she states that it was decided that, because the matter Royster raised in his letter already had been the subject of two grievances, no response was necessary. (Doc. 67 at 90 ¶ 4.) In a second letter dated February 25, 2006, Royster stated that he believed SMU staff had prevented Beard from receiving the earlier letter and that he would delay filing a civil complaint if Beard replied that he was willing to resolve the matter through an investigation. (*Id.* at 92.) The letter was referred to Defendant Burks, who answered Royster on March 21, 2006. (Doc. 65 ¶ 23; Doc. 67 at 95.) In her response, Burks indicated that the matter had been addressed in grievances numbers 82536 and 87765. (Doc. 67 at 95.)

## LEGAL STANDARD

Summary judgment will be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 249. In considering a summary judgment motion, inferences from the underlying facts must be viewed in the light most favorable to the non-moving party. *P.N. v. Clementon Bd. Of Educ.,* 442 F.3d 848, 852 (3d Cir. 2006).

The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Accordingly, the non-moving party "may not rest upon the mere allegations or denials of the . . . pleading," but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (citations omitted). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993). Allegations made

without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the evidence in favor of the nonmoving party is "merely colorable or not significantly probative," summary judgment should be granted. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994) (abrogated on other grounds)).

**DISCUSSION**

**I.      Retaliation Claim**

Royster contends that Huber retaliated against him by destroying the eighteen books that he confiscated from Royster's cell that were in excess of the ten book limit. (Doc. 1 at 4-5, ¶¶ 14, 16, 18, 19.) Royster claims that Huber retaliated against him because Royster filed a prior grievance relating to missing photographs. (*Id.* ¶ 11; Doc. 67 at 32-33.) In addition, Royster claims that Defendants Marsh, Kelchner, and Burks retaliated against him by deliberately responding to his grievances in a misleading way. (*Id.* at 5 ¶¶ 20-23.) He alleges that these Defendants also retaliated against him because he filed a grievance. (*Id.*)

In order to establish a retaliation claim, a plaintiff must satisfy three elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, an inmate plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 228 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "'sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *Id.* at 333 (quoting *Allah*, 229 F.3d at 225). Third, a prisoner plaintiff must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Id.* at 333 (quoting *Mount Healthy Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *Suppan v. Dadonna*, 203 F.3d 228. 235 (3d Cir. 2000). The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See Lape v. Pennsylvania*, 157 Fed. Appx. 491, 498 (3d Cir. 2005) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997)).

Once a plaintiff has made a *prima facie* case, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (internal quotation and citation omitted). When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. *Rauser*, 241 F.3d at 334.

In the instant case, Royster satisfies the first two elements necessary to sustain a retaliation claim. He alleges that he was retaliated against for filing prison grievances. It is clear that the filing of prison grievances constitutes protected conduct that falls within the protections of the First Amendment. *See e.g. Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Allah*, 229 F.3d at 224-25. Moreover, interpreting the facts in the light most favorable to Royster, the destruction of an inmate's property appears to be the kind of action that could deter a reasonable person from exercising his First Amendment rights.

However, with respect to the third element, Royster has failed to demonstrate that the fact that he filed grievances was a "substantial or motivating factor" in the decision to destroy his confiscated excess books as a form of retaliation. *See Rauser*, 241 F.3d at 333. Royster asserts that Defendant Huber retaliated against him because of a previous grievance he filed complaining about missing photographs, but in his deposition, Royster testified that he did not even mention Huber's name in that grievance or at least did not recall doing so. (*See* Doc. 67 at 33.) Therefore, it does not make sense that Huber would retaliate against Royster by confiscating the excess books in his cell because Royster previously had filed a grievance that did not name Huber.

Moreover, Royster alleges that he filed this previous grievance in February 2004, and his books were confiscated in April 2004 after a memorandum was issued by Defendant Marsh warning inmates that excess books would be confiscated. "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."

11

*Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  Absent such proof, the plaintiff must show that causation may be inferred "from the 'evidence gleaned from the record as a whole' . . ."  *Id.* (quoting *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 281 (3d Cir. 2000)).  Inasmuch as the previous grievance that Royster refers to was filed in February 2004, and his books were confiscated in April 2004, there is not an unusually suggestive temporal proximity, nor may causation be inferred from the record as a whole.  *See id.*

As to Defendants Marsh, Kelchner, and Burks, Royster alleges that they also retaliated against him because of past grievances.  But, at his deposition, as to Defendant Marsh, Royster could not say when these grievances were filed or against whom they were filed.  (*See* Doc. 1 at 5 ¶¶ 20, 21, 22; Doc. 67 at 32-33.)  Royster has failed to present any evidence of retaliatory intent as a result of past grievances on the part of Defendants Kelchner and Burks.  Accordingly, Defendants Huber, Marsh, Kelchner, and Burks are entitled to summary judgment as to Royster's retaliation claim.

## II.    Conspiracy Claim

Royster also claims that Marsh provided a misleading response to his grievances in order to further a conspiracy.  (Doc. 65 ¶ 6; Doc. 67 at 29.)  Royster testified that Defendant Burks took part in the conspiracy or cover up because of the "good old boy system."  (Doc. 67 at 31-32.)  He also testified that there was a "code of silence."  (*Id.* at 32.)  He claims that Defendant Kelchner was part of a conspiracy for the same reasons.  (*Id.*)

To establish a *prima facie* case of civil conspiracy, a plaintiff must allege "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. 2000). "[A]llegations of conspiracy are insufficient to state a cause of action where the complaint fails to allege 'facts constituting the conspiracy, its object and accomplishment.'" *Tumi, Inc. v. Excel Corp.*, 2005 WL 1828593, at *6 (D.N.J. 2005) (quoting *Black & Yates, Inc. v. Mahogany Assoc.*, 129 F.2d 227, 231 (3d Cir. 1942)).

In the instant case, Royster has not satisfied any of the requisite elements to establish a *prima facie* case of civil conspiracy. He has not alleged any facts constituting a conspiracy, its object and accomplishment. *See Tumi*, 2005 WL 1828593, at *6. He merely has made a vague reference to a "good old boy system" and "code of silence." (*See* Doc. 67 at 31-32.)

### III.    Claims Against Remaining Defendants

#### A.  Defendant Beard

Royster has failed to make any allegations against Defendant Beard for which Beard could be found liable. At his deposition, Royster admitted that Defendant Beard did not respond personally to Royster's letters and did not take the position that Beard should have responded personally instead of delegating the responsibility to others. (*See* Doc. 67 at 36.) It is apparent that Royster seeks to hold Beard responsible solely in his capacity as a supervisor.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). The personal involvement requirement may be satisfied by a showing of "personal direction or of actual knowledge and acquiescence." *Id.* Notwithstanding the fact that it already has been determined that Plaintiff has not presented sufficient evidence to sustain his retaliation and conspiracy claims, he fails to show that Beard had any actual knowledge of the way in which Defendants Marsh, Kelchner, and Burks responded to his grievances or that he personally directed them in any way. Therefore, Defendant Beard is entitled to summary judgment.

**B. Defendants Lehman, Kline, Stubbs, Steigerwalt, and Spriggle**

Defendants Lehman, Kline, and Stubbs are entitled to summary judgment. Royster has failed to demonstrate that there is a genuine issue for trial with respect to their alleged confiscation of incoming publications because Royster cannot say what publications were confiscated or how many were involved. (*See* Doc. 67 at 37-40.)

Defendant Steigerwalt is entitled to summary judgment because the claims against him are barred by the statute of limitations. Defendant Steigerwalt submitted an affidavit stating that he ceased working in the SMU on February 20, 2004, and thus he was not employed there during the relevant time period. (*See* Doc. 67 at 121-22.) Thus, to extent there are any claims against him, they arose prior to April 24, 2004 and are barred by the statute of limitations.

Defendant Spriggle is entitled to summary judgment because Royster is now precluded from asserting a claim against his estate. On March 7, 2007, Defendants filed a Suggestion

14

of Death as to Defendant Spriggle.  (*See* Doc. 21.)  Plaintiff did not seek to substitute Spriggle's personal representative as a party to this action within 90 days of the filing of a suggestion of death pursuant to Fed. R. Civ. P. 25(a)(1).  Therefore, he is now precluded from asserting a claim against Spriggle's estate, and summary judgment will be entered in Spriggle's favor.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 64) will be granted.  An appropriate Order follows.


July 24, 2008                               s/ A. Richard Caputo
                                                            A. RICHARD CAPUTO
                                                            United States District Judge

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TELLY ROYSTER, | : | |
| | : | |
| Plaintiff, | : | CIVIL NO. 1:CV-06-0842 |
| | : | |
| v. | : | (Judge Caputo) |
| | : | |
| JEFFREY BEARD, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

**AND NOW, this 24th day of July, 2008,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. Defendants' Motion for Summary Judgment (Doc. 64) is **GRANTED**.

2. The Clerk of Court shall close this case.

                                                          s/ A. Richard Caputo
                                                          A. RICHARD CAPUTO
                                                          United States District Judge